**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tonya Canady, | No. CV-19-04738-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Bridgecrest Acceptance Corporation, | |
| Defendant. | |

Pending before the Court is Defendant Bridgecrest Acceptance Corporation's ("Bridgecrest") motion to stay proceedings. (Doc. 36.) As relevant here, Bridgecrest argues this case should be stayed pending the Supreme Court's decision in *Facebook, Inc., v. Duguid*, No. 19-511. For the following reasons, the motion will be granted.

**BACKGROUND**

I.   Legal Backdrop

This case involves a claim under the Telephone Consumer Protection Act ("TCPA"), which prohibits the use of "automatic telephone dialing systems" ("ATDS") to generate and call cell phone numbers, as well as the "intiat[ion] [of] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b). Congress passed the TCPA in 1991 because Americans "are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020). Despite this united disdain, the TCPA has generated a fair amount of controversy in

recent years. One such controversy involved a 2015 amendment that exempted robocalls made "solely to collect a debt owed to or guaranteed by the United States" from the TCPA's prohibitions. *Id.* at 2344-45. "In other words, Congress carved out a new government-debt exception to the general robocall restriction." *Id.* at 2345. This amendment spawned a raft of litigation concerning whether the government-debt exception impermissibly favored some speech over other speech in violation of the First Amendment. Both the Fourth and Ninth Circuits concluded the new exception violated the First Amendment and severed it from the rest of the Act. *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019); *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019). Earlier this year, the Supreme Court reached the same conclusion. *Barr*, 140 S. Ct. at 2343-44.

The other simmering TCPA controversy involves the definition of "automatic telephone dialing systems." The TCPA defines ATDSs as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1). The Federal Communications Commission ("FCC") had previously defined what devices qualified as ATDSs but a 2018 ruling from the D.C. Circuit struck down the FCC's definition. *ACA Int'l v. FCC*, 885 F.3d 687, 694-704 (D.C. Cir. 2018). In the wake of that decision, courts faced a problem that was "enough to make a grammarian throw down her pen"—whether the phrase "using a random or sequential number generator" modified only "produce" or both "store or produce." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) (en banc). When faced with that problem, the Third, Seventh, and Eleventh Circuits concluded that "using a random or sequential number generator" modifies both "produce" and "store." *Id.*; *Glasser v. Hilton Grand Vacations Co., LLC,* 948 F.3d 1301, 1306-12 (11th Cir. 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119-21 (3d Cir. 2018). The Second and Ninth Circuits, in contrast, concluded that "using a random or sequential number generator" only modifies "produce," which means "an ADTS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the

capacity to 'store numbers to be called' and to 'dial such numbers automatically.'" *Duguid*, 926 F.3d at 1151 (quoting *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018)). *Accord Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 281 n.5 (2d Cir. 2020) ("The Ninth Circuit, which we follow here, concluded that an ATDS can, indeed, make calls from stored lists. The Seventh, Eleventh, and Third Circuits have concluded otherwise.").

Last fall, Facebook petitioned the Supreme Court to review the Ninth Circuit's interpretation. *Facebook, Inc. v. Duguid*, 2019 WL 5390116 (Oct. 17, 2019). In July 2020, the Supreme Court granted certiorari to determine "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *Facebook, Inc. v. Duguid*, 2020 WL 3865252 (2020).

II. Factual And Procedural History

The background of this case is set out more fully in the Court's April 23, 2020 order. (Doc. 27.) In a nutshell, Canady received a series of unwanted calls from Bridgecrest. Canady alleges that Bridgecrest used an ATDS and prerecorded messages when making those calls, in violation of the TCPA. (*Id.* at 1-2.)

On July 17, 2019, Canady filed a putative class action suit against Bridgecrest. (Doc. 1 ¶¶ 22-35.) On behalf of the putative class, Canady brings a single claim under the TCPA premised on the use of ATDSs and prerecorded messages. (*Id.* ¶¶ 36-43.)

On October 2, 2019, Bridgecrest moved to compel Canady to arbitrate her claim based on a contract signed by her husband. (Doc. 17.) Although Canady herself was not a signatory to the contract containing the arbitration clause, Bridgecrest identified various reasons why she should be deemed bound by the agreement. (*Id.* at 8-12.)

On April 23, 2020, the Court denied Bridgecrest's motion to compel arbitration. (Doc. 27.) Bridgecrest has appealed that decision. (Docs. 32, 33.)

On June 22, 2020, Bridgecrest moved to stay this action. (Doc. 36.) First, Bridgecrest argued that a stay was appropriate pending the Supreme Court's decision in *Barr*, because that decision had the potential to declare the entire TCPA unconstitutional.

(*Id.* at 7-10.) Second, Bridgecrest argued that the then-pending petition for certiorari in *Facebook* had the potential to narrow the issues litigated. (*Id.* at 10.) Third, Bridgecrest argued that a stay pending its appeal of the order denying arbitration was appropriate because it had "raise[ed] several serious legal questions on which [it] ha[d] made a substantial case for relief." (*Id.* at 11-12.) The motion to stay thereafter became fully briefed. (Docs. 40, 41.)

**ANALYSIS**

The legal landscape has changed significantly since Bridgecrest filed its motion. First, the Supreme Court issued its decision in *Barr*. Although *Barr* struck down a part of the TCPA not at issue in this case, the bulk of the TCPA lives on. Second, there is no longer a question of "if" the Supreme Court will review the Ninth Circuit's decision in *Facebook*—it has granted certiorari and briefing is now underway.

This means Bridgecrest's first basis for seeking a stay—to await a decision in *Barr*—is no longer tenable. The remaining questions are whether this case should be stayed until the Supreme Court issues a decision in *Facebook* and/or until the Ninth Circuit resolves Bridgecrest's appeal of the order denying arbitration. Because the Court finds a stay is justified based on *Facebook*, it need not reach the latter issue.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 428 (1936). When determining whether to issue a *Landis* stay, courts must weigh "competing interests," which include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and question of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). *See also Percy v. United States*, 2016 WL 7187129, *2 (D. Ariz. 2016). "If there is even a fair possibility that the stay will work damage to someone else,

the party seeking the stay must make out a clear case of hardship or inequity." *Percy*, 2014 WL 7187129 at *2. The Ninth Circuit has "sustained, or authorized in principle, *Landis* stays" where a plaintiff seeks only monetary damages, where "resolution [of one issue] had the potential to advance significantly the resolution of [another]," and where some, but not all claims, were subject to mandatory arbitration. *Lockyer*, 398 F.3d at 1110-11.

Since the Supreme Court granted review in *Facebook*, courts have split on whether a stay is appropriate in TCPA cases premised on the use of ATDSs. Some courts have declined to issue stays. *See, e.g., In re Midland Credit Mgmt., Inc. v. Tel. Consumer Protection Act Litig.*, 2020 WL 4436355 (S.D. Cal. 2020). One court, calling the question "close," declined to enter a stay because "[t]his case has already been stayed twice," the requested stay would remain in effect "for an indeterminate amount of time," and "regardless of [*Facebook*'s] outcome, discovery will need to take place in this case regarding (1) the existence and exact nature of any ATDS used . . . (2) whether [defendant] called [plaintiff] or any other potential class members using a prerecorded voice, and (3) whether such calls were directed to cell phone numbers other than that of the intended recipients." *Lacy v. Comcast Cable Commc'n, LLC*, 2020 WL 4698646, *2 (W.D. Wash. 2020). Thus, the court concluded it made more sense to "spare[] [defendant] from ATDS-related discovery that may prove superfluous" and to delay "dispositive motions on certification or liability." *Id.* Another court denied a stay for similar discovery-related reasons, as well as the fact that "it is purely speculative whether the United States Supreme Court will reach a decision in *Duguid* within a year." *Smith v. JP Morgan Chase Bank, N.A.*, 2020 WL 5033532, *2 (C.D. Cal. 2020).

Other courts have reached the opposite conclusion and granted a stay pending the Supreme Court's resolution of *Facebook*. *See, e.g., Seefeldt v. Entm't Consulting Int'l, LLC*, 2020 WL 4922371 (E.D. Mo. 2020); *Jensen v. Roto-Rooter Servs. Co.*, No. 2:20-cv-00223-JCC, Doc. 27 (W.D. Wash. 2020); *Wright v. eXp Realty, LLC*, No. 6:16-cv-015851-PGB-EJK, Doc. 108 (M.D. Fla. 2020). In *Seefeldt*, for example, the parties stipulated to a stay, which "while not dispositive, suggests a lack of potential prejudice or hardship to

them." *Id.* at *1. More important, the court found that "the interest of judicial economy favors the stay" because "without resolution of [*Facebook*], there would exist much more uncertainty about the TCPA at large and specifically, the viability of plaintiff's claims." *Id.* (internal quotation marks omitted). Thus, a stay would "avoid exhausting judicial resources to decide things" like motions to dismiss, motions for class certification, and "any possible discovery-related matters or summary judgment motions to follow which may prove fruitless." *Id.* (internal quotation marks omitted).

Turning back to this case, the Court concludes a stay is warranted. As an initial matter, Canady doesn't seek to end an ongoing injury. (Doc. 1 at 8.) Thus, this falls into one of the categories of stays approved by the Ninth Circuit. *CMAX*, 300 F.2d at 268-269. *Cf. Lockyer*, 398 F.3d at 1112 ("Unlike the plaintiffs in *CMAX* and *Leyva*, who sought only damages for past harms, the Attorney General seeks injunctive relief against ongoing and future harm.").

When assessing the competing interests at stake, the Court first must evaluate "the possible damage which may result from the granting of a stay." *Lockyer,* 398 F.3d at 1110 (quotation omitted). Here, the risk of harm to Canady is small. In her response, Canady asserted that a stay would prejudice her because it was speculative whether the Supreme Court would even grant review in *Facebook*. That is no longer speculative, and the Supreme Court is likely to issue a decision before the end of the upcoming term, which is less than a year away. Thus, the requested stay wouldn't be impermissibly "indefinite in nature." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007). Instead, a stay would only last until the Supreme Court issues a decision, which is a permissible end point. *Cf. Lockyer¸* 398 F.3d at 1110 ("[The Supreme Court] held that . . . a stay lasting only until the New York district court decided the case might be appropriate."); *Harrington v. Wilber*, 6710 F. Supp. 2d 951, 955 (S.D. Iowa 2009) ("Since a stay of less than a year is not 'indefinite,' the Magistrate Judge was not obligated to identify a 'pressing need' for staying [the] case.").

Canady also asserts that "any delay creates the risk that the evidence Plaintiff needs

to prevail on her claim will be destroyed, lost, corrupted, or forgotten." (Doc. 40 at 15.) However, Bridgecrest is now "aware of its obligations" and should have already "instituted a litigation hold to preserve documents that may be relevant to [this] litigation." *Loftus v. Signpost Inc.*, 2020 WL 2848231, *3 (S.D.N.Y. 2020). This, coupled with the fact that the stay is not for an indefinite amount of time, further underscores that there is little risk of harm in instituting a stay.

On the other side of the competing-interests ledger, the Court must evaluate whether a stay would promote the "orderly course of justice measured in terms of the simplifying . . . of issues, proof, and question[s] of law" and, relatedly, whether denying a stay might cause a party to suffer "hardship or inequity." *Lockyer,* 398 F.3d at 1110 (quotation omitted). These factors cut in Bridgecrest's favor. The Supreme Court's resolution of *Facebook* has the potential to significantly narrow the issues involved in this case, including the scope of discovery as to Canady's ATDS allegations and the scope of Canady's class-certification request. It's true that Canady's sole claim is premised on both ATDS issues and prerecorded-voice-message issues, the latter of which will be unaffected by the outcome of *Facebook*. (Doc. 1 ¶¶ 37-38.) But the fact that "a [pending] decision . . . may not settle every question of fact and law in [a] suit[] . . . , but in all likelihood . . . will settle many and simplify them all" weighs in favor of granting a stay. *Landis*, 299 U.S. at 256. *Cf. Lockyer*, 398 F.3d at 1110, 1111-12. Waiting for a decision to issue in *Facebook* will "avoid exhausting judicial resources to decide things like [motions to dismiss], [motions] for class certification, and any possible discovery-related matters or summary judgment motions to follow which may prove fruitless." *Seefeldt*, 2020 WL at *2 (internal quotation marks and citation omitted).

Finally, although the courts that have denied stay requests in similar cases have expressed hope that defendants could be spared from "discovery that may prove superfluous and dispositive motions on certification or liability" while otherwise allowing the case to move forward, *Lacy*, 2020 WL 4698646 at *2, the Court is concerned that such optimism may be unfounded. Determining exactly which motions and discovery requests

would be "superfluous" has the potential to result in inefficient satellite litigation. This is particularly true in this case, where Canady raises a single claim.

Having weighed the competing interests, the Court concludes a stay is warranted. There is only a slight risk of harm to Canady, and that risk doesn't outweigh the interests of efficiency and judicial economy that will be served by delaying further litigation of this action. Moreover, because Canady doesn't seek to prohibit future harm and the outcome in *Facebook* has the potential to significantly narrow the issues in this case, such a stay falls within the ambit of what the Ninth Circuit has previously approved. A stay avoids costly and potentially duplicative discovery and avoids satellite ligation over what should and shouldn't wait until after *Facebook* is decided.

Accordingly, **IT IS ORDERED** that:

(1) Bridgecrest's motion to stay proceedings (Doc. 36) is **granted**.

(2) This action is stayed pending the Supreme Court's resolution of *Facebook v. Duguid*, No. 19-511.

(3) The parties must file a joint notice of decision within 10 days of when *Facebook* is decided.

Dated this 3rd day of September, 2020.

Dominic W. Lanza
United States District Judge