**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tonya Canady, | No. CV-19-04738-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Bridgecrest Acceptance Corporation, | |
| Defendant. | |

**INTRODUCTION**

In this putative class action, Plaintiff Tonya Canady ("Canady") alleges that Defendant Bridgecrest Acceptance Corporation ("Bridgecrest") violated the Telephone Communications Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by placing calls to her cell phone throughout 2018 and 2019 without her consent while using an artificial or automated voice. (Doc. 1.)[1] Such calls are often referred to as robocalls.

In 2020, while this case was pending, the Supreme Court decided *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020). In *Barr*, a group of "organizations that participate in the political system" filed a declaratory judgment action in which they argued that § 277(b)(1)(A)(iii) of the TCPA—the same provision Bridgecrest is accused of violating in this case—is unconstitutional. *Id.* at 2344-45. The plaintiffs' theory was that because Congress had amended the TCPA in 2015 to add an exception that authorized

---

[1] The complaint also alleges that Bridgecrest violated the TCPA by using an automatic telephone dialing system ("ATDS") when making the challenged calls (Doc. 1 ¶ 37), but Canady has since clarified that she will not be pursuing that allegation (Doc. 83).

robocalls for one specific purpose (*i.e.*, collecting government debt), the addition of this exception meant that the post-2015 version of the TCPA favored some categories of speech over others, in violation of the First Amendment, and the only remedy was "to invalidate the entire robocall restriction." *Id.* at 2346.  Although the Supreme Court agreed with the plaintiffs that "the 2015 government-debt exception created an unconstitutional exception to the . . . robocall restriction," it rejected the plaintiffs' proposed remedy, holding that "the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction." *Id.* at 2348-55.

Based in part on *Barr*, Bridgecrest has now filed a motion for judgment on the pleadings.  (Doc. 62.)  In a nutshell, Bridgecrest argues that (1) the TCPA is unconstitutional in its present form because it contains seven additional content-based exceptions that were not addressed in *Barr*, none of which survives strict scrutiny, and the exceptions cannot be severed, both because they differ from the single exception that was severed in *Barr* and because the appellate courts possess exclusive jurisdiction to entertain challenges to some of the exceptions; and (2) alternatively, the TCPA was unconstitutional between 2015 (when the government-debt exception was enacted) and July 2020 (when it was severed in *Barr*), so no liability can arise from the alleged violations in this case because they occurred during the period of unconstitutionality. (*Id.*)  Bridgecrest's motion is opposed not only by Canady (Doc. 71) but also by the United States, which has intervened for the limited purpose of defending the TCPA's constitutionality (Doc. 79).

For the following reasons, the Court rejects Bridgecrest's challenges to the TCPA and denies its motion for judgment on the pleadings.

**STANDARD OF REVIEW**

A motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a Rule 12(b)(6) motion to dismiss. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  Therefore, a Rule 12(c) motion "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cnty. of Los*

*Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).[2]

## DISCUSSION

I. The TCPA In Its Present Form

    A. **The Parties' Arguments**

Bridgecrest argues that § 227(b)(1)(A)(iii) of the TCPA "remains unconstitutional to this day" because *Barr* only addressed the ramifications of one content-based exception to its general prohibition against robocalls (*i.e.*, the government-debt exception) and did not consider the constitutional ramifications of the following seven additional content-based exceptions and restrictions: (1) the exception for emergency calls codified within § 277(b)(1)(A)(iii); (2) an exception created by the Federal Communications Commission ("FCC") for "autodialed or prerecorded message calls by a wireless carrier to its customer when the customer is not charged"; (3) an FCC-created exception for certain healthcare-related calls; (4) an FCC-created exception for certain package-delivery notifications; (5) an FCC-created exception for schools to communicate with students and parents; (6) an FCC-created exception for certain messages by banks pertaining to fraud; and (7) an FCC-created restriction requiring a higher level of consent for calls made for a marketing purpose than calls made for an informational purpose. (Doc. 62 at 6-7.) Bridgecrest contends that none of these exceptions and restrictions survives strict scrutiny (although

---

[2] Although Bridgecrest argues that is entitled to judgment on the pleadings due to a lack of subject-matter jurisdiction, the Court views Bridgecrest's arguments as better characterized as being based on the lack of a plausible claim for relief. *Cf. Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 527 (6th Cir. 2021) ("Realgy moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), but its motion 'is more accurately considered a Rule 12(b)(6) motion to dismiss for failure to state a claim.' After all, a district court has jurisdiction when 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.' That is the case here. If Lindenbaum's arguments about the continuing vitality of the robocall restriction from 2015 to 2020 are correct, she is entitled to relief. So we will treat the district court's dismissal as one under Rule 12(b)(6) . . . .") (citations omitted). *See also Sagers v. Arizona State Univ.*, 2021 WL 4894318, 3 n.*3 (D. Ariz. 2021) (same). This clarification does not change the outcome—Bridgecrest's motion would be denied either way.

the exception for emergency calls may "come close"), so their presence "renders the TCPA a content-based restriction on speech that runs afoul of basic First Amendment principles." (*Id.* at 7-8.) As for the possibility of severance, Bridgecrest acknowledges that *Barr* held that the First Amendment concerns arising from the presence of a "single content-based exception" could be resolved through severance but argues that "nothing in the [*Barr*] ruling mandates that a statute containing *numerous* content-based exceptions should always survive constitutional scrutiny." (*Id.* at 8-9.) In support of this claim, Bridgecrest notes that the exception in *Barr* "was added by amendment late in the statute's life" whereas "many" of the challenged exceptions in this case "have existed for much longer." (*Id.* at 9.) Bridgecrest further contends that "there remains significant doubt that this Court could sever certain TCPA exceptions even if it desired to do so" because some of the exceptions were promulgated by the FCC and a different federal statute, 28 U.S.C. § 2342(1), "appears to deprive this Court of jurisdiction to sever FCC-created exceptions." (*Id.*) Finally, Bridgecrest argues that *Barr*'s approach to severance was "at tension with basic concepts of free speech and due process" and appears to urge the Court to follow a different approach in concluding that severance is unavailable here. (*Id.* at 9-11.)

In response, Canady argues that the post-*Barr* version of the TCPA is constitutional. (Doc. 71 at 11-17.) First, Canady argues that Bridgecrest forfeited any claim that the seven challenged exceptions are content-based restrictions that fail strict scrutiny because Bridgecrest "just declare[d]" this to be so without providing any reasoned argument or analysis. (*Id.* at 11-12.) Next, Canady argues that this Court lacks jurisdiction under 28 U.S.C. § 2342(1) to consider any challenge to the six FCC-promulgated exceptions and restrictions because "Bridgecrest's argument requires a threshold determination as to the validity of the FCC's Orders, which is precisely the sort of collateral attack prohibited by" that statute. (*Id.* at 12-14.) Alternatively, Canady argues that "even assuming the FCC regulations at issue do create content-based restrictions that fail strict scrutiny," they necessarily must be subject to severance because "[t]o hold otherwise would allow an agency acting *pursuant* to a statute to effectively repeal a statute, which the agency has no

- 4 -

power to do." (*Id.* at 14-15.) Finally, Canady argues that Bridgecrest's challenge to the emergency exception fails because (1) it is foreclosed by the Ninth Circuit's decisions in *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), and *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995), both of which upheld the constitutionality of the robocall restriction despite the presence of the emergency exception; and alternatively (2) the emergency exception survives strict scrutiny on the merits because it is narrowly tailored to serve a compelling governmental interest. (*Id.* at 15-17.)

In reply, Bridgecrest begins by arguing that it did not forfeit its claim that the seven challenged exceptions are content-based restrictions that fail strict scrutiny because the exceptions "are facially content-based" and it wasn't required to "write a treatise to present its arguments." (Doc. 76 at 2-3.) To the contrary, Bridgecrest argues that Canady forfeited any defense of the FCC-created exceptions by failing to explain why they should survive strict scrutiny. (*Id.*) As for § 2342(1), Bridgecrest contends that the statute does not bar its request for relief because it "is not seeking to invalidate any FCC final orders" and is simply requesting that the "TCPA's content-based robocall *restriction* . . . be set aside." (*Id.* at 3-4.) Alternatively, Bridgecrest contends that § 2342(1) should not be construed as interfering with this Court's ability to adjudicate constitutional claims and that Canady's interpretation of § 2342(1) would lead to absurd results. (*Id.* at 4-7.) Finally, Bridgecrest does not respond to Canady's arguments regarding the constitutionality of the emergency exception, arguing that the issue has been rendered "irrelevant" by Canady's failure to defend the FCC-created exceptions. (*Id.* at 2 n.1.)

After Bridgecrest filed its motion for judgment on the pleadings, the Court issued an order notifying the Attorney General of the United States "that a constitutional challenge to a federal statute has been presented in this case." (Doc. 66.) In response, and after obtaining an extension of time (Doc. 72), the United States filed a memorandum in support of the constitutionality of the TCPA. (Doc. 79.) With respect to Bridgecrest's challenge to the current iteration of the statute, the United States argues this Court lacks jurisdiction under 28 U.S.C. § 2342(1) to consider "the merits of [Bridgecrest's] challenge to the FCC's

exercise of its rulemaking authority." (*Id.* at 5-8.). As for Bridgecrest's challenge to the emergency exception, the United States argues that this challenge fails because (1) that exception "has been a part of the TCPA since its passage, but no court has ever suggested that the TCPA should be struck down on that basis"; (2) at any rate, the exception is not content-based; and (3) alternatively, the exception would survive strict scrutiny even if it were content-based. (*Id.* at 8-9).

In response, Bridgecrest argues that United States has implicitly conceded (by not arguing otherwise) that the FCC exceptions are content-based and fail to survive strict scrutiny (Doc. 85 at 1-3); that § 2342(1) does not deprive this Court of jurisdiction to consider the FCC exceptions, for the same reasons discussed in reply to Canady's response (*id.* at 3-6); that the emergency exception is properly considered a content-based restriction because it "turns on what the speech is *about*" and "also operates in favor of certain speakers" (*id.* at 7-8); and that the emergency exception cannot survive strict scrutiny because it is "shapeless and far from narrowly tailored" and "like a licensing scheme, . . . operates as an impermissible delegation of the right to restrict speech" (*id.* at 8-10).

B. **Analysis**

Bridgecrest's challenge to the constitutionality of the TCPA in its present form is unavailing.

1. FCC Exceptions

To the extent Bridgecrest's challenge is premised on the presence of the six exceptions promulgated by the FCC, the Court agrees with Canady and the United States that it lacks jurisdiction to consider that aspect of the challenge.

As background, the TCPA provision that Bridgecrest is accused of violating in this case is 47 U.S.C. § 227(b)(1)(A)(iii), which provides in relevant part that "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice . . . to any . . . cellular telephone service . . . ."[3]

---

[3] The final ellipsis in the quoted text takes the place of the phrase "unless such call is made solely to collect a debt owed to or guaranteed by the United States." As discussed,

Although the text of this provision only seems to create two exceptions (emergency purposes and consent), a different provision of the TCPA, 47 U.S.C. § 227(b)(2)(C), provides that the FCC "may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect." As Bridgecrest correctly notes in its motion, the FCC has promulgated a series of rules and orders pursuant to this provision that effectively insulate certain additional categories of calls (beyond those made for emergency purposes or with consent) from TCPA liability.

At first blush, the presence of these FCC-created exceptions would seem to provide the foundation for the same type of First Amendment challenge that was raised in *Barr*— that is, a challenge that § 227(b)(1)(A)(iii) of the TCPA "is a content-based restriction on speech" because it "draws distinctions based on the message a speaker conveys." 140 S. Ct. at 2346 (citation and internal quotation marks omitted). The wrinkle, however, is that a different statute, 28 U.S.C. § 2342(1), provides in relevant part that "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the [FCC]." Section 2342 goes on to explain that "[j]urisdiction is invoked by filing a petition as provided by section 2344 of this title." Finally, the cross-referenced provision, 28 U.S.C. § 2344, provides in relevant part that "[o]n the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies."

Although it presents a fairly close question, the Court concludes that § 2342(1) is implicated by the sort of challenge that Bridgecrest seeks to raise in this case and thus divests the Court of jurisdiction to resolve that challenge. As an initial matter, although

---

*Barr* held that this exception, which was added in 2015, should be severed.

- 7 -

Bridgecrest is raising its arguments related to the FCC-promulgated exceptions in a defensive manner, the Ninth Circuit has clarified that § 2342's "jurisdictional limitations apply as much as to affirmative defenses as to offensive claims." *United States v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000). *See also United States v. Any and All Radio Station Transmission Equipment*, 207 F.3d 458, 463 (8th Cir. 2000) ("A defensive attack on the FCC regulations is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike by seeking an injunction. Whichever way it is done, to ask the district court to decide whether the regulations are valid violates the statutory requirements."). Although Bridgecrest suggests these authorities "have little persuasive value because they lack the benefit of Justice Kavanaugh's reasoning" in his recent concurring opinion in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019) (Doc. 76 at 6-7), this Court is not at liberty to disregard a published decision of the Ninth Circuit based on statements in a subsequent Supreme Court concurring opinion. *Public Watchdogs v. S. Cal. Edison Co.*, 984 F.3d 744, 757 n.7 (9th Cir. 2020) (rejecting the argument that "Justice Kavanaugh's concurring opinion in *PDR*" undermined the longstanding rule in the Ninth Circuit "that the Hobbs Act must be construed broadly to encompass decisions that are preliminary or incidental to licensing" in part because "concurring opinions have no binding precedential value").

The more difficult question is whether Bridgecrest is, in fact, asking the Court to "enjoin, set aside, suspend (in whole or in part), or determine the validity of" the FCC orders in question. Bridgecrest contends that it isn't making such a request because the ultimate relief it seeks in this case—a finding that § 227(b)(1)(A)(iii) as a whole can't be enforced, due to the presence of unconstitutional content-based restrictions on speech— wouldn't *invalidate* the FCC orders in question. Instead, Bridgecrest contends that the FCC would be free to continue enforcing those orders after the decision in this case, and thus calls falling within the FCC's excepted categories would continue to be lawful, and the only effect of the decision would be to clarify that other categories of calls falling *outside* the FCC's excepted categories would be lawful, too. Although this argument has

surface appeal, it fails under closer scrutiny. To get where Bridgecrest wants it to go, the Court would need to make the following determinations: (1) the TCPA qualifies as a content-based restriction on speech due to the presence of the FCC-promulgated exceptions; (2) those exceptions "collectively and individually" fail strict scrutiny; and (3) those exceptions "cannot be severed to save the statute." (Doc. 62 at 6.) It is difficult to understand how the second step of this analysis could be viewed as anything other than "determin[ing] the validity" of the FCC-promulgated exceptions, to put it in the parlance of § 2342(1). To be sure, Bridgecrest's preferred remedy, during the third step of the analysis, would be to declare that § 227(b)(1)(A)(iii)'s liability provision is invalid (rather than the alternative of severing the FCC-promulgated exceptions), but the Court could only get to that step after evaluating the validity of the exceptions, which is something that § 2342(1) forbids.

The Ninth Circuit's decision in *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995), although not directly on point, strongly supports the conclusion that the Court lacks jurisdiction to consider the type of challenge that Bridgecrest seeks to advance here. In *Moser*, the plaintiffs mounted a constitutional challenge to § 227(b)(1)(B) of the TCPA, which creates a general prohibition against prerecorded calls to residential phone lines but authorizes the FCC to promulgate exceptions to that prohibition. *Id.* at 972. Pursuant to that authorization, the FCC adopted regulations "that exempted calls by tax-exempt, nonprofit organizations." *Id.* at 972-73. The district court ruled in the plaintiffs' favor, "declaring that the statute violated the First Amendment" due to the presence of content-based restrictions that failed strict scrutiny. *Id.* at 973. On appeal, the FCC first argued that "the lawsuit should have originated in the court of appeals, which has exclusive jurisdiction over challenges to FCC regulations," because the "challenge necessarily is to the regulations." *Id.* Critically, the plaintiffs responded by "insist[ing] they expressly challenge[d] the statute and only the statute." *Id.* Given this clarification, which established that the plaintiffs were mounting "a narrow challenge" that "does not reach the regulations *which are outside the jurisdiction of the district court*," the Ninth Circuit

concluded that the district court was not divested of jurisdiction over the challenge. *Id.* (emphasis added). However, the court went on to reject the plaintiffs' challenge on the merits, concluding that because it was not reviewing the substance of the FCC's regulations and was simply reviewing the "content-neutral" portion of the TCPA that authorized the FCC to promulgate exceptions, the statute did not violate the First Amendment. *Id.* at 973-75.

Here, Bridgecrest has not limited its challenge in the manner that the *Moser* plaintiffs chose to limit their challenge—it does not argue that the applicable provision of the TCPA authorizing the FCC to create exceptions, 47 U.S.C. § 227(b)(2)(C), qualifies as unconstitutional content-based restriction but rather asks the Court to address the specific exceptions that the FCC has promulgated pursuant to that grant of statutory authority. This approach is difficult to reconcile with *Moser*, which stated that "the regulations . . . are outside the jurisdiction of the district court" and took pains to note that "we do not review here the FCC's regulation that exempts noncommercial automated calls from its ban." 46 F.3d at 973.[4] Although Bridgecrest has identified a variety of reasons why it believes § 2342(1) should not be construed in this manner (Doc. 76 at 4-7), those arguments are largely foreclosed by *Moser*, which this Court must follow.

The one potential distinction between this case and *Moser*, which is the distinction that has given the Court the most pause in its analysis, concerns whether Bridgecrest has other options, apart from a defensive challenge in this case, to challenge the propriety of the FCC-promulgated exceptions. The Ninth Circuit has recognized that, although § 2342(1) generally bars defensive challenges that question the validity of FCC orders and regulations, a different approach might be required in "a case in which [the defendant] had no means to obtain judicial review of the regulations." *Dunifer*, 219 F.3d at 1008. In *Moser*, the plaintiffs clearly had such an option—the opinion notes that, at the same time the plaintiffs were seeking a declaration of unconstitutionality as to § 227(b)(1)(B) of the

---

[4] The Court notes that the plaintiffs in *Barr*, like the plaintiffs in *Moser*, also declined to "separately challenge the validity of the FCC's regulatory exceptions." 140 S. Ct. at 2344 n.1.

TCPA in district court, they were challenging the FCC's exception "in a separate proceeding initiated in this court [the Ninth Circuit] as a petition for review of Commission action." 46 F.3d at 973.

The procedure for challenging an FCC order in the court of appeals is set forth at 28 U.S.C. § 2344, which provides that the "party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." Bridgecrest contends that, because it seeks to challenge FCC orders that were issued between 2012 and 2016 (Doc. 62 at 7 nn. 4-9), the 60-day deadline for seeking review in the court of appeals has long since expired, leaving it with no options apart from raising a defensive challenge here. (Doc. 76 at 5-6.) This argument has some force, but the Court is not ultimately persuaded. As *Moser* makes clear, it *is* possible for a regulated entity that fears TCPA liability to raise a timely affirmative challenge to an FCC-created exception by seeking review in the court appeals pursuant to 28 U.S.C. §§ 2342(1) and 2344. Although Bridgecrest apparently did not pursue relief through this mechanism as the challenged FCC orders were being issued between 2012 and 2016, Bridgecrest has not argued (let alone presented any evidence) that it would have been impossible to do so.

At any rate, the decision in *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017)—which Canady discussed in her response brief (Doc. 71 at 14) but Bridgecrest failed to address in its reply—suggests that Bridgecrest also had (and has) other options for seeking relief pursuant to § 2342(1). In *Bais Yaakov*, the FCC issued a new rule in 2006, pursuant to its authority under the TCPA, that required the senders of solicited faxes to comply with certain requirements. *Id.* at 1080. In 2010—that is, well after § 2344's 60-day deadline for seeking review of the rule in the court of appeals had expired—a company that was in the business of sending solicited faxes, and which faced $150 million in potential liability based on the new requirements, "sought a declaratory ruling from the FCC" that it was not required to comply with the new requirements. *Id.* at 1080-81. Four years later, in 2014, the FCC issued an order upholding the new requirements. *Id.* at 1081. After the FCC issued this ruling, the challengers filed a petition

for review in the D.C. Circuit "under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1)." *Id.* The D.C. Circuit ultimately agreed with the challengers, holding that "the FCC's 2006 Solicited Fax Rule is unlawful to the extent that it requires opt-out notices on solicited faxes" and thus vacating "[t]he FCC's Order in this case," which "interpreted and applied that 2006 Rule." *Id.* at 1083. The Court interprets *Bais Yaakov* as establishing that Bridgecrest could still challenge the FCC exceptions at issue in this case via § 2342(1), despite the fact that they were initially promulgated between 2012 and 2016, by seeking further clarification from the FCC regarding those exceptions and then, if necessary, seeking relief from the court of appeals within 60 days of the issuance of the FCC's decision.

Finally, decisions from outside the Ninth Circuit, although obviously not binding here, provide further support for the conclusion that Bridgecrest's arguments regarding the FCC-created exceptions fall outside this Court's jurisdiction. The parties' briefs identify three decisions in which TCPA defendants sought to raise constitutional challenges based on the existence of content-based exceptions created by the FCC, and in all three cases, the court concluded that the challenge was barred (or likely barred) by § 2342(1). *Drake v. FirstKey Homes, LLC*, 439 F. Supp. 3d 1313, 1327 n.6 (N.D. Ga. 2020) ("Defendant also attacks as unconstitutional 'the myriad other content-based exemptions in the statute and as construed by the FCC . . . .' However, each of these challenged regulations likely falls outside of this Court's jurisdiction."); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1149 (D. Minn. 2017) ("LIUNA argues that . . . the FCC has promulgated content-based exceptions through FCC orders. . . . Because this Court lacks jurisdiction to entertain a constitutional challenge as it pertains to FCC orders, the Court does not consider those exceptions for the purpose of this analysis."); *Mejia v. Time Warner Cable Inc.*, 2017 WL 3278926, *15 n.7 (S.D.N.Y. 2017) ("To the extent that Time Warner seeks to challenge any particular FCC order promulgated under that provision, this Court lacks jurisdiction to consider such a challenge.").

…

### 2. Emergency Exception

Because the Court lacks jurisdiction to consider Bridgecrest's First Amendment challenge to the extent it is premised on the FCC exceptions, the sole remaining basis for that challenge is the statutory exception for calls "made for emergency purposes." 47 U.S.C. § 227(b)(1)(A)(iii). As noted, Bridgecrest's theory is that this exception has all of "the hallmark[s] of content-specificity" under *Barr*, and therefore triggers strict scrutiny, but cannot survive strict scrutiny due to its vagueness and over- and under-inclusivity. (Doc. 85 at 7-10.)

As an initial matter, the Court disagrees with Canady that the Ninth Circuit's decisions in *Gomez* and *Moser* are dispositive of this challenge. Although both decisions rejected constitutional challenges to the TCPA, neither decision specifically addressed whether the presence of the emergency exception in § 227(b)(1)(A)(iii) created any First Amendment issues. *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004) ("[C]ases are not authority for propositions not considered.") (internal quotation marks omitted).

Nevertheless, on the merits, Bridgecrest's challenge is unavailing. Even assuming, as Bridgecrest asserts but the United States disputes, that the emergency exception qualifies as a content-based restriction, this simply means that the government must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015) (citation and internal quotation marks omitted). Bridgecrest does not seem to dispute that the compelling-interest component of this test is satisfied and the Court agrees, at any rate, with the United States' contention that "[t]he Government has a compelling interest in protecting health and safety." (Doc. 79 at 8-9.) *See also Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 170 (4th Cir. 2019) ("[E]mergency calls serve the vital purpose of protecting the safety and welfare of Americans . . . .").

As for narrow tailoring, the Court substantially agrees with analysis of the emergency exception in *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017). There, the court concluded, among other things, that "Congress carefully balanced the interests in the health and safety of consumers with the interests in protecting privacy and determined the emergency call exception was carefully tailored to address both interests." *Id.* at 1047. Other courts have reached the same conclusion. *See, e.g., Drake*, 439 F. Supp. 3d at 1327 n.6 ("[W]hile the Court finds that Defendant has not sufficiently argued that the 'emergency-purposes exception' is unconstitutional, the Court emphasizes that other courts have upheld the provision."); *Greenley*, 271 F. Supp. 3d at 1150; *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1033 (N.D. Cal. 2017). No court, at least according to the parties' briefs, has reached a contrary conclusion.

Finally, even assuming for the sake of argument that the presence of the emergency exception were alone sufficient to transform § 227(b)(1)(A)(iii) into an impermissible content-based restriction on speech, this would not end the inquiry—the final step would be to assess, as the Supreme Court assessed in *Barr*, whether the solution is to sever the offending exception (and thus return § 227(b)(1)(A)(iii) to content-neutrality) or to declare the entire provision invalid. However, the sole argument related to severance in any of Bridgecrest's briefs is that it would be impossible to sever *all seven* of the challenged exceptions (*i.e.*, the emergency exception plus the six FCC-created exceptions), both because "nothing in [*Barr*] mandates that a statute containing *numerous* content-based exceptions should always survive constitutional scrutiny" and because this Court would face jurisdictional limitations on its ability to sever the FCC-created exceptions. (Doc. 62 at 8-11.) Nowhere does Bridgecrest provide any reasoned argument as to whether the emergency exception alone may be severed. The Court thus finds this argument to be forfeited for purposes of the present motion.

…

…

…

II. The TCPA Between 2015 And July 2020

 A. **The Parties' Arguments**

Bridgecrest's final argument is that even if the TCPA is constitutional in its current form, "this Court still lacks subject-matter jurisdiction over [Canady's] claims because the TCPA's robocall restriction was unconstitutional when the alleged conduct occurred." (Doc. 62 at 11-17.) According to Bridgecrest, the robocall restriction in TCPA became unconstitutional in 2015, when Congress amended it to add the government-debt exception, and "only became constitutional after the Supreme Court in [*Barr*] severed the government-debt exception." (*Id.* at 11-12.) In support of this view, Bridgecrest cites a concurring opinion by a judge of the Federal Circuit, the concurring-in-part-and-dissenting-in-part opinion of Justice Gorsuch (joined by Justice Thomas) in *Barr*, and four post-*Barr* district court decisions. (*Id.* at 12-14.) Bridgecrest acknowledges that other "district court decisions . . . have found subject-matter jurisdiction over pre-severance robocall claims" but contends that those cases were "wrongly decided" because they placed undue emphasis on footnote 12 of *Barr*, which was not adopted by five Justices and therefore sets forth only "non-binding dictum" concerning the liability of parties that made robocalls during the period in question. (*Id.* at 14-15.) Finally, Bridgecrest argues that allowing liability in this circumstance would violate Supreme Court precedent, which precludes liability for violating an unconstitutional statute, and result in impermissible discrimination based on the content of its speech. (*Id.* at 15-17.)

In response, Canady argues that the "longstanding rule" applied by the Supreme Court is that an unconstitutional statutory amendment is a nullity and void when enacted, so the 2015 enactment of the government-debt exception "had no impact (temporary or otherwise) on the validity of the robocall restriction." (Doc. 71 at 6-7.) Canady also argues that "Supreme Court precedent requires this Court to give *retroactive* effect to" constitutional decisions, including decisions (like *Barr*) involving severance. (*Id.* at 7-8.) As for footnote 12, Canady argues that it has the force of law, even though it appeared in the three-Justice plurality opinion, because four other Justices "agreed with the plurality

on severability and concurred in the judgment." (*Id.* at 9-11.) Finally, Canady notes that 20 district courts, as well as the Sixth Circuit, have held that defendants may be held liable for robocalls placed between 2015 and 2020 and two of the four contrary decisions cited by Bridgecrest have since been reversed. (*Id.* at 4-6, 11.)

In reply, Bridgecrest does not address any of Canady's arguments and simply "reserves its argument" that liability for conduct between 2015 and July 2020 is impermissible. (Doc. 76 at 8.)

The United States also addresses, in its memorandum, the issue of liability for calls made between 2015 and July 2020. (Doc. 79 at 9-17.) The United States' arguments on this issue largely mirror Canady's, other than to note that the number of post-*Barr* district court decisions rejecting Bridgecrest's position has now risen to "over forty." (*Id.*)

In response, Bridgecrest acknowledges that "its position . . . has come to be a minority view," makes clear it continues to "reserve its argument," and otherwise does not respond to the United States' arguments and cited cases. (Doc. 85 at 10.)

B.     **Analysis**

This issue requires little discussion. Dozens of district courts and at least one Circuit court have issued opinions rejecting Bridgecrest's contention that nobody can be held liable under the TCPA for robocalls placed between the enactment of the government-debt exception in 2015 and the issuance of *Barr* in July 2020. *See, e.g.*, *Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 528 (6th Cir. 2021) ("Realgy contends that severability is a remedy that fixes an unconstitutional statute, such that it can only apply prospectively. As a fallback, it argues that if it can be held liable for the period from 2015 to 2020, but government-debt collectors who lacked fair notice of the unlawfulness of their actions cannot, it would recreate the same First Amendment violation the Court recognized in [*Barr*]. Neither argument has merit."); *Abramson v. Fed. Ins. Co.*, 2020 WL 7318953, *2 (M.D. Fla. 2020) ("[T]he vast majority of cases this Court has reviewed conclude that parties may continue to bring claims under the portions of § 227(b) unaltered by [*Barr*].") (citations omitted).

The Court agrees with those opinions and adopts their analysis and reasoning.[5]

Accordingly,

**IT IS ORDERED** that Bridgecrest's motion for judgment on the pleadings (Doc. 62) is **denied**.

Dated this 21st day of January, 2022.

Dominic W. Lanza
United States District Judge

---

[5] If the Ninth Circuit reaches a contrary conclusion in the pending case cited in Bridgecrest's brief, Bridgecrest may, of course, seek reconsideration of this ruling under LRCiv 7.2(g).